Good morning. My name is Renee Magnus. I'm here on behalf of the petitioner, Mr. Dispennett. I would like to reserve two minutes for rebuttal argument. The one fact that both experts who testified at the evidentiary hearing agreed on unequivocally is that the records that Mr. Dispennett's trial counsel sought in the state courts are absolutely vital to the preparation of the defense of Mr. Dispennett. As Dr. Laura Sebastian, the court's expert, testified, she receives these records as a matter of routine in hundreds of state and federal cases in which she conducted forensic analysis of issues of mental retardation. They are absolutely vital to her preparation. She would not take the case if she could not obtain access to these records. These are the records that Mr. Dispennett's trial counsel sought with multiple motions at the trial court level before the Oregon courts. These are the records which trial counsel was consistently denied access to. The ruling of the Supreme Court in Pennholster was not intended to punish a diligent petitioner. It was intended to say that a petitioner must diligently attempt to develop their claims in state court. However, the Supreme Court was clearly stating that petitioners who are diligent in state court, who make the efforts to seek the records, will not be subject to the same type of procedural bars as non-diligent petitioners. As in Michael Williams, a petitioner who presented a completely unexhausted, totally newly discovered claim for the first time in his federal habeas case, and the Supreme Court held that he was entitled to be heard on the merits in that claim in the first instance because he had made efforts in the state court to seek the records by seeking funding, even though at that point in time in the state court he was not aware of what might be in the jury records that he was looking for. He just wanted the opportunity to examine them. The Supreme Court held he would not be procedurally barred on his claims. Mr. Dispinette and his counsel were even more diligent than the petitioner in Michael Williams. Judge, now Judge Jane Aiken, knew precisely what she was looking for. She was looking for issues related to the complaining witness's mental retardation as it might impact her suggestibility because this was a woman who the first time she was talked to about her assailant stated four times that she did not know who he was. It was not until someone else suggested a name to her that she adopted that gentleman she had seen once prior and this was a gentleman she could not pick out of a lineup. There was also no physical evidence that linked Mr. Dispinette to this crime. At the time of trial it was not known that the DNA evidence would be itself exculpatory, although we have subsequently found that out. The only evidence linking Mr. Dispinette to this crime was the identification by the complaining witness who was a woman suffering from intellectual and developmental disabilities at the time called mental retardation. Making an identification of Mr. Dispinette based upon a suggestion of a name by another individual. Trial counsel recognized that this was a critical issue for Mr. Dispinette to investigate. Trial counsel recognized that she needed a qualified expert to analyze this issue, to explain it to a jury. Trial counsel recognized that in order to have any competent expert provide her with an opinion she would need the underlying documentation. Why couldn't she have presented the evidence of suggestibility without reference to the records? Well as Dr. Laura Sebastian, the state's expert, testified, she wouldn't take a case if she couldn't get the evidence. So you had one expert who turned it down? There was no effort to find another expert who could testify and proffer testimony about suggestibility? In the trial court level, Ms. Aiken sought access to the records and funding for an expert, and she specifically requested funding for the expert to review the records. The opinion of the state court precludes access to the record and does not grant any funding for an expert. Without funding for an expert, Ms. Aiken could not obtain any expert to testify on any issues. It's also notable that the state specifically moved in limine to keep Ms. Aiken from raising the issues of mental retardation and suggestibility. And that motion in limine is in the excerpts of record at 263 to 266. So the state contended that the issue of mental retardation and suggestibility was completely irrelevant to the case. Could you address the in-camera review? Because both the magistrate judge and the district court, although they went off on different grounds, both of them said they looked at the records and they didn't find anything material. So could you address the Ritchie argument that you're making as to why it's clearly established under Ritchie that you had the right to access these county files? Ritchie was seeking the DHS records regarding the complaining witnesses. They did not, and were criticized by the Supreme Court for not identifying what they were after in those records. And the Supreme Court said, this is a situation Let's assume that you've complied with identifying what you wanted. Is Ritchie clearly established? Does it clearly establish that under the circumstances that these files are held that you had a due process right to have the court review them for material evidence? Absolutely. I believe Ritchie clearly establishes at the least an in-camera review. The majority in Ritchie also notes that the review and the exculpatory nature of those potential records should be ongoing, that additional evidence may arise throughout the trial, which when the court first looks at records, it may not realize what is exculpatory in them. But as evidence goes on, the court should look again to make a determination if now there's anything in there that in fact was exculpatory. Judge Stewart's analysis, which is in the second ER at 182 to 186, as to why she believed her own in-camera review was inadequate and the records needed to be provided to counsel who could then discuss the issues of what they wanted. And we made a filing, which was what led us to be granted the leave to have an evidentiary hearing and to provide the records to the experts, at which point both experts testified. Both Dr. Sebastian and both Dr. Fierro said, yes, these are critical records. Didn't Ritchie specifically exclude your case? I'm sorry? Didn't Ritchie specifically exclude from its coverage your case? Didn't the court say or express an opinion on whether the result in this case would have been different if the statute had protected the CYS files from disclosure to anyone, including law enforcement and judicial personnel? In terms of whether or not these... It did say that. Ritchie did say that, but the Oregon statute is not a complete prohibition. Judge Stewart analyzed that issue, and as Dr. Sebastian testified, in Oregon she gets these matters routinely. So any contention that there's an absolute prohibition in Oregon on disclosure of these records is inaccurate under the only evidence presented to the district court on this issue. I see I'm down to 58. That's a question of law. It's not a question of fact, is it? Well, it's a question of statutory interpretation, and Judge Stewart interpreted the statute noting that these records are provided in civil suits, and she could not understand how a civil defendant could get the records and a criminal defendant could not. The Oregon statute is not an absolute prohibition, and Dr. Sebastian's testimony, I believe, confirmed that fact, that that's how the practice is in Oregon courts. Experts get these records. Okay, we'll hear from the other side. May it please the Court, I'm David Thompson, representing Superintendent Cook. The case reduces to one rather narrow issue, and that is whether the state criminal trial court decision to deny in-camera review of the mental health records of the victim in this case is contrary to or represents an unreasonable application of clearly established federal law as determined by the United States Supreme Court. And it really reduces to a question of whether under Pennsylvania v. Ritchie or Brady v. Maryland, as the petitioner has framed it, the state court's decision was either contrary to those decisions or an unreasonable application of those decisions. Why isn't it an unreasonable application of Ritchie? Ritchie indicates that where there's not an absolute bar to access, which was the case in Ritchie and arguably is the case here, because there are exceptions as to when others can get access to the contents, that the defendant has a due process right to at least have a judge look at the file to determine whether there are materials that would be material and critical to his defense. So why isn't that aspect clearly established and that it was unreasonable not to apply it to the facts of this case? Your Honor, it is clearly established that a statute like the one that was at issue in Ritchie, there would be at least a due process right to in-camera review of the records. So the turning point for this case is a comparison between the statutes that were at issue. The statute at issue in Ritchie had a specific provision that allowed for disclosure of the records via a court order of competent jurisdiction. That particular provision does not appear in the statute that was in play at the time that the state trial court ruled on the question of whether there was an absolute privilege regarding these records. This court will want to look at Oregon Revised Statute 179.505, and it will want to look at the version of that statute that is contained in the 1993 volume of the Oregon Revised Code. And it does allow exceptions to nondisclosure, correct? It allows summons. Is the answer yes? Yes. It doesn't have the legal authority provision that was involved in the Pennsylvania statute, but reading from Ritchie, I just want to get your take on this language because it cites the provision that you referenced. It says, this is not a case where a state statute grants CYS the absolute authority to shield its files from all eyes. And then it goes on to say it cites the exception for directed to do so by court order. And then it says, and this is the passage that arguably I would think applies here, given that the Pennsylvania legislature contemplated some use of CYS records in judicial proceedings, we cannot conclude that the statute prevents all disclosure in criminal prosecutions. In the absence of any apparent state policy to the contrary, we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is material to the defense. You seem to be reading the Supreme Court's pronouncement in Ritchie as limited to a statute that specifically provides for judicial review. What I just read sounds more like a principle of due process jurisprudence. I would agree, Your Honor, that there is some broad language in Ritchie with respect to what a state legislature may contemplate in their statutes. And I have to concede that the statute in place at the time that the state criminal trial court ruled had some exceptions to disclosure. The question, I think, reduces to this. The state trial court was in the position of construing the statute in front of it, effectively for the first time, that any state court, without any appellate court assistance, to determine whether we had in this particular case what amounted to nearly absolute confidentiality on these records. The question then becomes, did the state court unreasonably construe the statute? And the petitioner has not made any argument here that the state trial court unreasonably construed the state statute and therefore unreasonably applied Ritchie in denying in camera review. And it seems that the petitioner would have to meet both those steps in order to hurdle the epideference that this court is required to give the state court on a determination like this. How did the state court construe the state statute? The state court construed the state statute as not allowing for disclosure of these records to virtually anyone. Now, the virtually anyone is probably right, but I think that the court was looking at specifically section 11 of 179-505. You sort of started to answer my question, then you went off on a tangent. So the state court didn't say this statute precludes disclosing information to anyone. It said virtually anyone. Well, I will backtrack on that, Your Honor. Okay. This is why I asked you a question. Yes. The state court, and let me clarify, I believe the state court was of the view that this statute prohibited disclosure to anyone. That was the state court's view. To anyone at all. Yes. And given the way the statute is written, you think that's a reasonable interpretation? No, that isn't. I don't think that's a reasonable interpretation with respect to the anyone position. So you're backtracking on your other statement, too, when you said this is a reasonable interpretation of the statute. So you're now saying the state court unreasonably interpreted the statute. Right? That's what you're now conceding or stating. I think I have to look at section 11. Why don't you just say yes or no? Yes, I don't think that the court, insofar as it construed the state statute to preclude disclosure to anyone, was correct on that. So we have an interpretation of the state law that you now claim is incorrect. And it's incorrect on the very point that makes this case either on all fours or distinguishable from Ritchie, on the question of whether or not this is disclosable, whether this precludes disclosure to everyone. Right? On exactly that point. Why haven't you just given away your case? Why haven't you just conceded that, in fact, we've got an unreasonable interpretation of the statute, so we have to then construe it ourselves because we have an unreasonable interpretation of the statute? And so far as the state court applied Ritchie using an unreasonable interpretation of the statute, why isn't that per se an unreasonable interpretation of Federal law? I'm not saying that the state court unreasonably interpreted the state statute. It may incorrectly have interpreted the state statute. And as we know ---- I thought incorrectly was worse than unreasonably. Not according to ---- I thought something is incorrect, and even if it's sort of technically correct, it could still be unreasonable. So unreasonable actually is, once you've said incorrect, you've said all that can be said. According to the United States Supreme Court, there is a difference between incorrect and unreasonable. Which way does it cut? Pardon me? Which way does it cut? It cuts this way, that this Court is not in a position under ADPA deference to grant relief when the state court may simply be incorrect in its interpretation of the law. It has to be unreasonable. State ---- I'm sorry. I thought if it is an incorrect application of established Supreme Court precedent ---- No. The United States ---- Then we can grant relief. In Harrington v. Richter, Your Honor, the United States made very clear that the Federal courts on Federal habeas review are not determining whether or not the state court was incorrect in applying clearly established Federal law. Okay. But the clearly established law is Ritchie. Ritchie clearly establishes that in a not ---- I won't say you're conceding that. But if state law does not absolutely provide access, I mean prevent access, it has exceptions. Oregon has exceptions. Now, the trial court in assessing the constitutional claim of a due process right to access to very vital information, let's assume that, if it incorrectly interprets the ---- is not permitting disclosure to virtually anyone, are we supposed to ignore in our analysis as to whether that's okay? You can basically avoid applying Supreme Court clearly established law by coming up with an incorrect or wrong reason for doing so? I see that my time is up, Your Honor. Can I respond to that question? Sure. You must respond. Your time is not up until we say your time is up. Thank you. I think that this Court has to look at Ritchie with respect to the specific statute that it was interpreting or looking at in that case. And, yes, there is some broad language with respect to what the legislature may contemplate with respect to disclosure. But I believe that there is wiggle room in Ritchie between the statute that was in play in Ritchie and a statute like that which was in play in 1994 for the State Criminal Trial Court, which included a provision, Section 11 of 179.505, which said, no written account referred to in Subsection 2, and that describes the records of this section, may be used to initiate or substantiate any criminal, civil, administrative, legislative, or other proceedings conducted by Federal, State, or local authorities against the patient or to conduct any investigations of the patient. And that's where I think the State Trial Court was not unreasonable in interpreting the State statute to mean that in this criminal proceeding, this statute prohibits me from disclosing these records and prohibits me from even doing an in-camera review. That is an absolutely reasonable interpretation of the statute, and that gave the State Trial Court the foundation for rejecting the due process claim which was effectively based on Ritchie. And so there's the steps I think this Court needs to take in determining whether or not there ultimately was a reasonable application of clearly established Federal law in this case. And I don't think there was. Thank you. Thank you. We have a little time left for a bottle. We'll round it up to a minute. Your Honor, I think that you are absolutely accurate that Ritchie is clearly applicable to the fully exhausted claim, which everyone agrees is fully exhausted, the necessity for in-camera review. We also believe you're right. What's your response to counsel's argument that the Oregon statute was so specific in terms of limits of disclosure that as a foundational point, it's not an unreasonable determination by the State Trial Court? The statute, as counsel conceded, did allow for disclosure of these records in certain instances. That is on all fours with the language in Ritchie, that this is not an absolutely prohibitive statute. There are times when the records are disclosed. They are disclosed in civil cases. They were disclosed in other criminal cases, as Dr. Sebastian discussed in her testimony. The statute on his face just talks about prisoner cases, right? Does it talk about civil cases in general? I'm sorry, Your Honor. I don't have it in front of me. I could certainly take a look at it and give you the analysis from Judge Stewart in a 28J letter. The issue in terms of the specific provision of the statute that counsel was discussing talked about investigations against the prisoner. Let me be specific. There are certain things in the statute, and I thought I heard you say there was a practice of providing more. Yes. That's not covered by the statute, by the language of the statute. I'm not quite sure what to do with that. That's what Dr. Sebastian discussed, and Dr. Sebastian was the State's expert. That's what she discussed in her testimony before the district court, that she's testified in hundreds of cases in Oregon's state and federal courts, prosecution, defense. She routinely gets these records. They are absolutely vital. She would not take the case without them. The facts before the district court was that experts in forensic evaluations obtained these records. That strikes me as a question of state law. We're not in a very good position to determine. If the state court says the statute is categorical, almost categorical, can we sort of take evidence that, in fact, it's being violated on a continual basis? What are we essentially saying? I think that we can take that evidence because the interpretation, this is a statute subject to interpretation, and clearly other state courts have interpreted the statute differently because experts are being provided these records in the state and federal courts in Oregon. This argument was never made to the state courts. No, it was not made to the state court. It was never available. Well, when Judge Aiken was undertaking her briefing, she briefed numerous issues. She briefed the federal constitutional issues, the Sixth and Fourteenth Amendment issues. She briefed the need for the opportunity to investigate and present a defense and confront the witnesses. I don't believe that she did not have an expert. She did request funding for an expert. It was never granted it, so she didn't present the testimony from any expert saying, I've obtained these records in other cases that she did not present, but, again, she was not granted funding to retain an expert. And I have nothing further, Your Honors? Is the claim of not getting funds for an expert, is that before us? No, there was no specific claim on funds for an expert. There are two claims. The preserved claim. I'm trying to understand what you gain by making that argument here, if it's not a claim that's before us. Well, if we're talking about reasonable interpretations of state court law and whether or not this was a reasonable interpretation of state court law, I think the fact that an expert has testified that this is. . . She's not an expert in law. This is an expert. No, she's just the forensic expert that both prosecution and defense rely on in evaluating these experts in various. . . evaluating these disability and mental retardation issues in various cases. She says, I get this information all the time, right? This is what you're saying. Correct. We have a state law interpretation that is contrary to that, and the statute itself on its face looks like it's contrary to that. Can we sort of take the word of a layperson, oh, my experience is that the statute in practice gets interpreted differently as a way of second-guessing the state court interpretation of the statute? Well, I think Your Honor can certainly consider that in terms of evaluating whether or not this was a reasonable interpretation of the statute as urged by counsel for the government, that it's interpreted differently in hundreds of others' cases certainly tends to indicate that this was not a reasonable interpretation of the statute in this particular case. Okay. Thank you. The case is argued and stands submitted. Thank you, Your Honor. The next case on the calendar is Katie v. Mid-Continent Casualty.
judges: Kozinski, Fernandez, Fisher